Rogers, J.
I will briefly state the reasons of my dissent from the opinion just delivered. I throw out of view the acts of the widow, previous to the 10th of November, 1825; for I admit that if these acts amount to an election to take under the .will, she cannot after-wards have her dower at common law. On the first point, these were properly left by the court to the jury, with the expression of the opinion, in which I concur, that they were unimportant acts done by her, and did not conclude her rights, nor prevent her. from her election.
I'discard, also, all idea of combination a.nd fraud, for such was not pretended in the Court of .Common Pleas; and is thrown in here, as a mere make weight in a question, I apprehend, of mere law. If the jury should believe there was actual fraud, there would be an end of the controversy; but the persons who were concerned in the settlement of this business, forbid all supposition with me that this was the case.
That this is the case of election is not doubted; the widow cannot claim under the will, and at common law. The devise to the widow is not expressly in lieu of dower, but it is máde so by *29 the 10th section of the act of the 4th of Upril, 1797, with an express saving of her choice either of dower, or the estate devised. It may be as well here to observe, that it is not necessary the widow’s election be made in the Orphans’ Court, but in one event; that is, when she has not made’her election within twelve months from the death of the testator. The act of assembly does not preclude from her election, before the expiration of that time; and I know of no place where it can be more properly made than in the office of the register, which has jurisdiction of the probate of wills.
By the instrument of the 10th of November, 1823, she manifests her intention, by an unequivocal act, by which she was ábsolutely bound; for it is not pretended, but it was voluntarily done, and of her own free will and accord. It was a determination of her election, which may be either by express words, or by act. 3 Com. Dig. title Election, 540. After this solemn act, she was entitled to her dowér, and nothing else: she could not take under the will, without the consent of those who had interest under it. Their rights vested and could not be' devested without their assent. An equivocal act may be explained, but not such an act as this. The election may be kept open for twelve months, but when once made, it concludes the parties. 3 Com. Dig. title Election, 540.
Standing in this situation, the widow came to .the agreement of the 19th of November, 1823, with Isaac Cauffman, and the residuary legatees, and the executors nf the will.
It will, I am sure, be conceded that her right of dower, in the lands of Isaac, was a fair article either of sale, or compromise. This free privilege has never yet been denied her, and, I trust, never will. If Isaac and the residuary legatees, or the executors, had agreed to .give her one thousand, pounds for her right of dower in his land, it .would surely have bound them; and John Cauffman would have had no right to complain. It would have been open to him, to make the same compromise. , But the argument is, that because they undertake to give, and she accepts the same property devised her by the will, that their acts amount to an election to take under the will. The principle is not denied, that a person shall not claim -under an instrument, without giving full effect to that instrument, as far as he can. 2 Mod. 640. 2 Vern. 581. 2 Vern. 617. 2 Atk. 629. The question here is, does she take under the will, or the agreement of the 10th of November. If ever there was care taken to exclude a conclusion, it has been done here. The parties to the agreement expressly say, that the release is a compromise with the devisees and legatees, of Christian Cauffman, so far as respects Isaac Cauffman, George Eupp, and Benjamin Eberly, and that the reference to the will, is only to designate the privileges, money, and other articles she is to receive from those, who, by law are bound to pay the same. She also expressly refers to the filed paper of the 10th of Novem *30 ber, and again confirms and solemnly ratifies it. In the face of all this, we are gravely told, that the acts of the widow amount to an election to-take under the will. By a system of'legal metaphysics, which I cannot comprehend, the counsel for the defendant in error compel her to elect contrary to her intention.
But what is the justification of this? It is said, at the bar, that after shé expressly disclaims all intention of taking under the will, yet she now enjoys the articles devised to her by the will. If the interest of John Cauffman were affected, there would be some show of sense in the argument. It is, however, plain, that he is placed-in no worse situation by the arrangement, for the grandson has the same right, and the same remedies, as if the compromise had not been made. Had the widow, without entering into agreement, recovered her dower, what would have been his remedy? He would have been entitled to a compensation, for his proportional share of the privileges relinquished by the .widow, and the remedy would have been by an action- against Isaac, and the exetors. Although the course of a Court of Chancery would be to sequester the devised interest' quousque, till satisfaction is made to the disappointed devisee; yet, in Pennsylvania, where we have no Court of Chancery, it is submitted there is no such power: the articles would go into the hands of the executor, he would have a legal right to them; they would be subject to his disposition. The land of Isaac would have been discharged from the burden imposed by the will. The action then would have been against ■the executor, and the owners of the land, for a compensation, and ■the jury would have been directed to give such damages as were right, under the circumstances of the case. The measure of damages would be the value of the articles and privileges relinquished,. and that in proportion to the respective value of the .dowers recovered. If this suit prevails, he has precisely the same remedy and no other. ‘ How then, has he a right to complain of the agreement, when his rights are not affected? He would not, I expect, be entitled to the articles, but a compensation, to be ascertained by suit.. But, if we adopt the argument of the plaintiff in error, the loss is thrown upon the widow, by a construction in express contravention of the intention of all the parties to the agreement of the 10th of November, 1S23. In my view of the case, justice would be done to all.. On the contrary, the widow loses all.
But it has been said, that the legatees are .not parties to the contract. This idea was not hinted at in the Common Pleas: it was left to be discovered by legal ingenuity here. They were present when the agreement was made, took possession of it, put it on the record, and performed their part of the agreement, by payment of the money, and by putting the widow in the possession of the articles referred to. it would require some assurance for them, now to allege they were not parties to the agreement *31 The la.w regards substance, not shadows. They do not now make the objection: it is John Cauffman. expressly, not á party, and who I have shown is not injured by thebarrangement, who takes the objection. On the best consideration which I have been able to give this case, I am of the opinion, that justice and the law of the country requires, that the judgment of the Common Pleas be affirmed. -
Judgment reversed.